FILED

2007 MAY -4 P 2: 14

U.S. DISTRICT COURT
EASTERN DIST. TENN.

BY_______ DEPT. CLERK

UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **JIM ANDERSON, JAMES GALLACIO STEVEN KANAN, VERA F. BAKER TRUST, WESTBAY MANAGEMENT, CO. and WAYNE ANDERSON, on behalf of themselves and all other stockholders of Wilon Resources, Inc.,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **HARRY F. THOMPSON, AMY PYE, ERIC J. THOMPSON, WILON RESOURCES, INC., a Tennessee Corporation, and JOHN DOES 1-5, fictitious defendants,** <br><br> **Defendants.** | **VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL** <br><br> 1:07-cv-100 <br> Collier/Lee |

**Plaintiffs Jim Anderson, James Gallacio, Steven Kanan, Vera F. Baker Trust, Westbay Management, Co. and Wayne Anderson, hereinafter collectively referred to as "the plaintiffs," complaining of defendants Harry F. Thompson ("H. Thompson"), Amy Pye ("Pye"), Eric J. Thompson ("E. Thompson"), Wilon Resources, Inc., and John Does 1-5, fictitious defendants, hereinafter collectively referred to as "the defendant directors," state as follows:**

## JURISDICTION AND VENUE

**1. Jurisdiction of this federal court is based upon alleged violations of 18 U.S.C. § 1962, hereinafter 'the RICO Act" which provides in relevant part that the district courts of the United States should have jurisdiction over violations of the RICO Act and the power to restrain future illegal conduct as well as to award damages to those persons injured thereby.**

**2. Jurisdiction over the state law causes of action alleged in this Verified Complaint is so related to the claims based on the RICO Act such that they form a part of the same case and controversy and therefore are pendent to the federal cause of action alleged.**

3. Alternatively, the jurisdiction of the court may also be based on diversity of citizenship pursuant to Section 1332 of the United States Judicial Code, 28 U.S.C. § 1332, because all of the plaintiffs reside in states other than Tennessee, the defendants all reside in the State of Tennessee and the amount in controversy exceeds $75,000.

4. Venue is proper in this Court pursuant to Section 1391(a) of the United States Judicial Code, 28 U.S.C. § 1391(a), since the defendant corporation is a Tennessee corporation and each of the defendants reside in Tennessee.

PARTIES

5. Plaintiff Jim Anderson is a citizen of the State of Georgia whose current mailing address is 6725 Ridgefield Drive, Alpharetta, Georgia 30005, who as of February 28, 2006 held 1,575,000 shares of Wilon common stock, 3,000 of which he has sold since that date. The remaining 1,572,000 shares of Wilon common stock were in fact acquired on or about January 28, 2004 and are still held by plaintiff Jim Anderson.

6. Plaintiff James Gallucio is a citizen of the State of New Jersey whose current mailing address is 60 Bearfort Road, West Milford, New Jersey 07480 who, as of February 28, 2006, held 25,000 shares of Wilon common stock, none of which he has sold since that date. The 25,000 shares held by James Gallucio were in fact acquired on January 28, 2004.

7. Plaintiff Steven Kanan is a citizen of the State of New Jersey whose current mailing address is 806 Morris Turnpike, Apartment 4H2, Short Hills, New Jersey 07078 who, as of February 28, 2006, held 1,000 shares of Wilon common stock which he acquired on April 8, 2004 and has since acquired ownership of an additional 200,000 shares .

8. Plaintiff Vera F. Baker Trust is a citizen of the State of California whose current mailing address is 12870 Chatsworth Lane, Grass Valley, California 95945 who, as of February 28, 2006, held 450,000 shares of Wilon common stock, of which approximately 70,000 shares have been sold since that date. The 450,000 shares originally held by Vera F. Baker Trust were in fact acquired on or about January 28, 2004.

9. Plaintiff Westbay Management Company is a citizen of the State of New Jersey whose current mailing address is 11 Homestead Lane, Lincoln Park, New Jersey 07038 who as of February 28, 2006, held 446,000 shares of Wilon common stock and at this writing holds approximately 240,000 shares which it has owned since April 8, 2004.

10. Plaintiff Wayne Anderson ('Anderson') is a citizen of the State of Florida whos e current mailing address is 33 6th Street South, Suite 204, St. Petersburg, Florida and is a partner of Around the Clock Partners, LP, a Delaware limited partnership which as of February 28, 2006 held 1,002,705 shares of Wilon common stock, none of which have been sold since that date.

11. Defendant H. Thompson who has a mailing address of 3875 Hixson Pike, Chattanooga, Tennessee 37415 is a citizen of the State of Tennessee and the President, Treasurer and a director of defendant Wilon.

12. Defendant Pye who has a mailing address of 3875 Hixson Pike, Chattanooga, Tennessee 37415 is a citizen of the State of Tennessee and the Secretary and a Director of defendant Wilon.

13. Defendant E. Thompson who has a mailing address of 3875 Hixson Pike, Chattanooga, Tennessee 37415 is a citizen of the State of Tennessee and the Vice-President and a Director of defendant Wilon.

14. Defendant Wilon Resources, Inc. ('Wilon" or 'the corporation') is a corporation organized under the laws of the State of Tennessee and has its principal place of business located at 3875 Hixson Pike, Chattanooga, Tennessee 37415.

15. John Does 1-5, fictitious defendants are individuals with respect to whom the plaintiffs do not presently have sufficient evidence to name as defendants, but may have conspired with the defendant directors to commit violations of the RICO Act and/or the common law causes of action alleged in this Verified Complaint.

## PRELIMINARY STATEMENT

The facts alleged in this case demonstrate that the defendant directors violated the RICO Act and have disregarded fiduciary obligations owed to the plaintiffs and other shareholders of Wilon Resources, Inc. First, it is undisputed that they fraudulently issued to themselves 5,000,000 shares of Wilon common stock on December 26, 2006 which constituted approximately twenty (20%) percent of the then issued and outstanding shares of the corporation without any consideration. In addition, they failed to properly manage the corporate assets consisting of mineral rights on leaseholds required in Wayne County, West Virginia and Magoffin County, Kentucky. On information and belief, they converted monies paid to Wilon to construct an internal pipeline system to enable the natural gas wells drilled by the corporation to be connected directly to an interstate natural gas pipeline and converted monies paid to the corporation to construct an anime scrubber which would eliminate impurities that are in the natural gas produced by Wilon from deep wells. Finally, they committed mail fraud by sending communication to the plaintiffs and in press releases which fail to disclose the above cited fraudulent conduct of the defendant directors.

## DESCRIPTION OF THE CORPORATION CONTAINED IN A FORM U-7 REGISTRATION STATEMENT SIGNED BY THE DEFENDANT DIRECTORS

The company was formed under the laws of Tennessee as Wilon Resources, Inc., on October 1, 1998 to engage in the production of natural gas. From October, 1998 to February, 1999, the Company entered into 13 leases in Wayne County, West Virginia which contained a total of 31 producing natural gas wells, a gathering system, and meters. The leases, known as the Trace Fork Group, were with a number of nonaffiliated third parties and called for the payment of an annual acreage fee of $2 per acre (if non-producing) or a 12.5% royalty fee if producing. In addition, royalty of 12.5% on revenues are before the deduction of taxes and costs of maintaining the wells. The thirteen leases encompass between two to three thousand

acres. The Company has a 100% working interest in all leases with no unaffiliated third party ownership.

Through 1999, the Company replaced three compressors in the system in order to more efficiently deliver natural gas and also reworked all the wells, including cleaning them out, replacing valves and fittings, replacing tubing, access roads, repairing drainage systems, and replacing parts of the gathering system. Sales of natural gas were made to nonaffiliated, Energy Partners, representing over 90% of the sales. Presently, the majority of the wells on the Wayne County properties are undergoing routine [sic]. [The] cost[s] averages $500 per month per well.

In January, 1999, the Company purchased 41 natural gas wells in Wayne County, West Virginia from Myers Drilling Company, Inc., at a cost of $80,000. The wells and leases encompass approximately six thousand acres. Thirty of the wells are presently being reworked at a cost of $10,000 per well. After the completion of the purchase of the property, the Company commenced to place a few of the operating natural gas wells into production. Pipe joints had to be replaced as the gas pressure exceeded the aggregate limits of the joints. Most of the wells had to be cleaned out, valves and fittings were replaced, meters repaired, tubing replaced, gathering system up graded, and the drainage system improved.

The Company also acquired an additional 17 natural gas wells in the same area of operation in September, 1999 at a cost of $45,000. These natural gas wells had not been in operation for a number of years and needed extensive work done to make them operational. The work included cleaning out, replacing valves and fittings, replacing tubing and laying of lines for the gathering system to deliver gas to the main pipeline.

In the year 2001, the Company acquired the mineral rights of 120 acres in Magoffin County, Kentucky. These leases are under the same terms and conditions as the leases in Wayne County, West Virginia, with annual acreage fee of $2 per acre (if non-producing) or a 12.5% royalty fee if producing. In addition, royalty of 12.5% on revenues are before the

deduction of taxes and costs of maintaining the wells. All thirteen wells are producing with a range of 48% to 56% operating profit.

ALLEGATIONS COMMON TO ALL COUNTS

16. In accordance with the above cited description, it would appear that, during the period 1998 through 2002, Wilon acquired a total of 89 wells, most of which required extensive reworking in order to be productive. However, during the past two years the defendant directors have represented that Wilon only owns 65 natural gas wells. No explanation was given to the plaintiffs as to what happened to approximately 25 wells acquired not to speak of the fact that Wilon has been the recipient of drilling programs that should have resulted in an additional 15 to 20 wells drilled which would bring the number of natural gas assets to nearly 100 potentially productive wells. At this writing, all of the named plaintiffs are and have been shareholders of Wilon common stock during the time period when the misconduct of the defendant directors alleged in this Verified Complaint was committed. The major acts of misconduct detailed in this Verified Complaint are believed to have taken place during the period February 2006 through the present. The plaintiffs bring this action on behalf of themselves and all other stockholders similarly situated.

17. The plaintiffs were shareholders of Wilon during the times of the wrongs herein alleged and do fairly and adequately represent the interests of shareholders similarly situated.

18. Defendant Wilon is a company alleged to be engaged in exploration, development and production of natural gas in the Appalachian Basin, particularly in Wayne County, West Virginia and Magoffin County, Kentucky.

19. By reason of family relationship, the officers and directors of Wilon were at all times herein mentioned and still are dominated and controlled by defendant H. Thompson in such manner that they were and are subservient to his wishes and direction without regard to the best interests of Wilon and its shareholders.

**20. Based on information obtained by the plaintiffs, there is another director of Wilon by the name of Brian P.S. Gray. He has not been named as a defendant because the plaintiffs do not have sufficient information to hold him responsible for the allegations contained within the Verified Complaint although he was a director during the times complained of. The plaintiffs have expressly reserve their right to file an amended complaint naming Mr. Gray as a defendant in the event the facts so warrant.**

**21. Prior to instituting this action, the plaintiffs did not make formal written demand in accordance with TENN. CODE ANN. § 48-17-401(b)(2007) on the defendant directors asking them to prosecute suit against these defendants because such a demand would be a mere 'idle ceremony" and thus futile.**

**22. On or about March 13, 2007, plaintiff Wayne Anderson, acting through his partnership or investment vehicle, Around the Clock Partners, LP, made an offer to purchase at a price of $1.40 per share all of the 15,729,834 shares of Wilon common stock he believed were then outstanding in accordance with information contained in a Form 10 registration statement dated January 12, 2007 filed with the Securities and Exchange Commission. (The aforesaid Form 10 filing was subsequently withdrawn by the defendant directors prior to that registration statement becoming effective.)**

**23. As an integral part of the March 13, 2007 purchase proposal, plaintiff Anderson made several demands akin to those referred to in TENN. CODE ANN. § 48-17-401(b) (2007). These demands included that:**

**(a) Wilon provide a gas analysis from 10 wells selected by the proposed purchasers;**

**(b) Wilon return and cancel any shares issued in addition to those identified in a Form 10 filing on January 12, 2007 with the United States Securities and Exchange Commission;**

(c) Wilon provide a copy of all leaseholds held in the states of West Virginia and Kentucky, along with documentation that the mineral rights of leaseholds continue to be held by Wilon by the payment of appropriate fees and royalties;

(d) Wilon provide a copy of any agreements between it and any corporations that defendant H. Thompson may own, sit on the board of, work for, or have any financial interest with outside of Wilon;

(e) Wilon provide a copy of any employee or managerial agreements between the corporation and the defendant directors;

(f) Wilon provide a copy of any agreements whereby the corporation has entered into an instrument of financial responsibility; and

24. More specifically, as part of the proposed purchase proposal, plaintiff Wayne Anderson demanded reproduction of agreements whereby Wilon agreed to guarantee the cost of the construction of an internal pipeline in Kentucky as well as a personal loan of defendant H. Thompson on land he purchased in West Virginia.

25. As of the date of the filing of this Verified Complaint, the defendant directors have failed to provide any of the information requested by plaintiff W. Anderson.

26. In addition, the defendant directors failed to give appropriate consideration to plaintiff Wayne Anderson's proposal to purchase all of the properly issued and outstanding shares of Wilon common stock, a purchase which would have benefitted all shareholders of the corporation.

27. On April 2, 2007, defendant H. Thompson issued a press statement which omitted material facts concerning his ownership of the internal pipeline/gathering system paid for by Wilon but owned by this defendant through Wilon Gathering Systems, Inc. This misleading press release misrepresented the status of the internal pipeline/gathering system by stating as follows:

> Although we generally will not comment on market rumors concerning the Company, we are aware of rumors currently circulating among investors and market professionals to the effect that Wilon Resources is involved in discussions concerning one or more takeover proposals for our Company. Management wishes to state that Wilon Resources, Inc. is not presently for sale and we have no plans to enter into negotiations or discussions with any party leading to such a transaction at this time. <u>Our full efforts and attention are focused on achieving the resumption of natural gas deliveries through our connection to Columbia Gas Transmission, as well as the establishment of a new pipeline connection that will allow the delivery of our production through Tennessee Gas Pipeline, a subsidiary of El Paso Natural Gas.</u> We believe that achieving these goals would create more long-term value for our investors than pursuing a sale of the Company under the present circumstances.

(Emphasis added).

28. Since at least September 2006, defendant H. Thompson has been representing to shareholders that the defendant corporation would be taking various actions, including, but not limited to the installation of a natural gas internal pipeline/gathering system to connect the natural gas wells owned by Wilon to an interstate carrier of natural gas, which would increase shareholder value. There has been no such action taken. Instead, there has been an overall diminution of shareholder value due the fact that the natural gas wells owned by Wilon have been shut-in and therefore are not producing. Each day that the natural gas wells owned by Wilon are shut-in, as they are at the time of the filing of this Verified Complaint, this fact diminishes the value of shareholder interests in Wilon.

29. In addition to the foregoing instances of mismanagement, on information and belief, defendant Wilon has entered into a drilling/participation agreement dated November 2006 to drill 23 natural gas wells as part of a $12,000,000 drilling program funded by Provident Oil Gas Production, LLC. of Dallas, Texas.

30. Although Wilon was intended to be the beneficiary of income from these drilling programs, defendant H. Thompson has seized this corporate opportunity by having a company in which he is a substantial stockholder, namely B.T.U. Pipeline, Inc., to be operator of the wells.

31. Further to the drilling/participation agreement, the defendant directors have failed to perform their obligations under said agreement because, with the exception of obtaining two permits to drill two wells, they failed to obtain permits required by the State of West Virginia prior to March 31, 2007. Accordingly, the defendants have placed this $12,000,000 drilling program in jeopardy by their mismanagement.

32. Upon information and belief, defendant H. Thompson holds the fraudulently obtained 5,000,000 shares of Wilon common stock in an entity known as Harlis Trust where he also holds shares in Wilon Gathering Systems, Inc., B.T.U. Pipeline, Inc. and other corporations used by him to siphon off assets of Wilon and defraud the shareholders. Therefore it follows that the Harlis Trust qualifies as the enterprise required to be established under the RICO Act.

33. The misconduct of the defendant directors' actions and omissions of which the plaintiffs are just beginning to uncover include the following:

(a) In December 2006, without any authorization or notice from the shareholders, defendant H. Thompson issued 5,000,000 shares of Wilon common stock to himself thereby substantially and fraudulently diluting the stockholder interests of other Wilon shareholders. When the 5,000,000 shares were issued Wilon common stock was trading on the electronic pink sheets at a price of approximately $1.50 making the value of these purloined shares approximately $7,500,000. The corporation did not receive any consideration known to the shareholders for the issuance of these 5,000,000 shares of Wilon common stock. To the contrary, at the time of the fraudulent issuance of the aforesaid 5,000,000 shares of Wilon common stock to defendant H. Thompson, the corporation had failed to complete an internal pipeline or gathering system which the defendant directors had represented to Wilon stockholders would enable the corporation to connect natural gas wells with an interstate pipeline carrier such as the Columbia Gas Transmission and/or the Tennessee Gas Pipeline, Houston, Texas, an affiliate of El Paso Corporation, Houston, Texas. Accordingly, this event constituted a form of counterfeiting which is a predicate for the federal RICO Act.

(b) Upon information and belief, the defendant directors have violated fiduciary obligations owed and have mismanaged defendant Wilon by failing to pay fees necessary to maintain mineral rights on leaseholds allegedly owned by Wilon where there has been no production of natural gas and therefore no royalties from these leaseholds. The failure to make these payments has either resulted in the loss of valuable leaseholds owned by defendant Wilon or otherwise placed them in jeopardy to lease shareholders of the corporation.

(c) At all times relevant, the defendant directors failed to disclose to their shareholders that the natural gas produced by Wilon from wells more than 3,000 feet deep contained impurities that require treatment by an amine treatment plant before the natural gas produced would be accepted by interstate carriers such as the Columbia Natural Resources Pipeline and/or Tennessee Gas Pipeline, Houston, Texas, an affiliate of the El Paso Corporation, Houston, Texas.

(d) The defendant directors, and particularly defendant H. Thompson have seized corporate opportunities to drill natural gas wells in other jurisdictions, including, but not limited to opportunities in the State of Louisiana.

(e) Although the defendant directors have been the subject of several oral and written communications by the plaintiffs or their representatives, the defendant directors have failed to return phone calls and other attempts to communicate asserted by the plaintiffs and other major shareholders of Wilon.

(f) In accordance with a Form 10 registration statement dated January 12, 2007 filed with the Securities and Exchange Commission on or about January 12, 2007 during the year ended September 30, 2006, 3,724,834 shares of Wilon common stock were issued for cash at a price of $0.75 per share to be used for company operations and well maintenance purposes. On information and belief, the proceeds of these sales were siphoned off by the

defendant directors to pay for an internal pipeline gathering system owed by Wilon Gathering Systems, Inc., a company owned and operated by defendant H. Thompson through the alleged enterprise in this matter, the Harlis Trust. This constitutes fraudulent conduct relating to a theft of company assets which is a predicate event to allege violation of the federal RICO Act.

(g) Upon information and belief, the defendant directors have falsely proclaimed that Columbia Natural Resources Interstate Pipeline is not willing to accept delivery of natural gas produced by Wilon. In fact, in August 2006, defendant H. Thompson issued a press release that falsely stated that Columbia is willing to accept Wilon natural gas. However, he later advised plaintiffs and other shareholders that Columbia was insisting on "clean" gas prior to its acceptance. This press release and related communications constituted mail fraud which is another predicate required by the federal RICO Act. However, the defendant directors have failed to produce documentation from Columbia that Wilon gas produced in Wayne County West Virginia had to be clean prior to its acceptance.

(h) Upon information and belief, the defendant directors, and in particular defendant H. Thompson, has converted funds paid by the plaintiffs and other shareholders to purchase Wilon common stock to personal investments in natural gas wells in Floyd County, Kentucky and/or natural gas wells owned by him in Louisiana.

34. The misconduct of the defendant directors enumerated above has caused harm to the plaintiff stockholders by reason of the conduct of an enterprise here identified as the Harlis Trust through a pattern of racketeering activity. The misconduct of the defendant directors also constitute violations of state common law causes of action, including common law fraud, breach of fiduciary obligations owed, abuse of control, conversion, corporate waste and gross mismanagement. This conduct merits an immediate order for an accounting to be prepared by an independent certified accountant selected by the plaintiffs.

35. In light of the misconduct of the defendant directors in seizing corporate opportunities, misusing funds invested in or loaned to the corporation, this court should immediately order an accounting by an independent certified accountant or by a businessman with experience in evaluating natural gas companies to determine the dollar value of the damages sustained by the plaintiffs and other stockholders of the corporation.

36. The misconduct of the defendant directors and, in particular, defendant H. Thompson is so severe and so material and constitutes a clear picture of conflicts of interest that it merits an order of this court removing them as directors and the appointment of an interim slate of directors for Wilon approved by a majority of the shares other than those legitimately held by the defendant directors. In addition, the court should award attorneys' fees and costs to counsel for the plaintiff shareholders as provided by the RICO Act.

## FIRST COUNT

(Cause of action for Violation of RICO)

37. Pursuant to 18 U.S.C. § 1962(a), it shall be unlawful for any person who received any income, directly or indirectly, form a pattern of racketeering activity in the acquisition of any interest in or the establishment of, any enterprise which is engaged in activities which affect, interstate or foreign commerce.

38. Under 18 U.S.C. § 1962(b), it shall be unlawful for any person through a pattern of racketeering activity to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

39. Under 18 U.S.C. § 1962(c), it shall be unlawful for any person employed by or associated with, any enterprise engaged in or the activities which affect interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs or a pattern of racketeering activity.

40. Pursuant to 18 U.S.C. § 1962(d), it shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b) or (c) of the RICO Act. In addition, at all times relevant defendants Pye and E. Thompson have conspired with defendant H. Thompson to commit violations of the RICO Act.

41. Pursuant to 18 U.S.C. § 1341, 'Whoever, hav ing devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both." By sending false status reports and copies of false press releases and other claims concerning the activities of the corporation constituted more than one event of mail fraud.

42. As stated in the Allegations Common to All Counts Section of this Verified Complaint, the enterprise utilized by the defendant directors in violation of the RICO Act to conduct racketeering activity is the Harlis Trust and the defendant directors are deemed to have conspired with each other to violate sections (a), (b) and (c) of RICO.

43. Included among RICO' s enforcement mechanisms is a private right of actin available if "[a]ny person [is] injured in his business or property by reason of a violation of [the RICO Act and he] may sue therefore in any appropriate United States district court and

shall recover threefold the damages he sustains and the costs of the suit, including a reasonable attorney's fee. . . ." 18 U.S.C. § 1964(c).

**SECOND COUNT**

**(Cause of action for an Accounting)**

44. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through forty-three of this Verified Complaint the same if they had been fully set forth herein at length.

45. The misconduct of the defendant directors detailed in the Allegations Common to All Counts Section of this Verified Complaint demonstrate the need for an issuance of an order for an accounting by an independent certified accountant of the financial records of the corporation who would be selected by shareholders of the corporation other than the defendant directors.

**THIRD COUNT**

**(Cause of action for Common Law Fraud)**

46. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through forty-five of this Verified Complaint the same if they had been fully set forth herein at length.

47. The misconduct of the defendant directors detailed in the Allegation Common to All Counts section of this Verified Complaint constitutes common law fraud by one or more of the defendant directors.

**FOURTH COUNT**

**(Cause of action for Breach of Fiduciary Obligations)**

48. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through forty-seven of this Verified Complaint the same if they had been fully set forth herein at length.

49. The mis conduct of the defendant directors detailed in the Allegations Common to All Counts section of this Verified Complaint constitutes breaches of fiduciary obligations owed to the plaintiffs and other Wilon shareholders similarly situated.

**FIFTH COUNT**

(Cause of action for Abuse of Control)

50. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through forty-nine of this Verified Complaint the same if they had been fully set forth herein at length.

51. The misconduct of the defendant directors detailed in the Allegation Common to All Counts section of this Verified Complaint constitutes an abuse of control.

**SIXTH COUNT**

(Cause of action for Corporate Waste)

52. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through fifty-one of this Verified Complaint the same if they had been fully set forth herein at length.

53. The misconduct of the defendant directors detailed in the Allegations Common to All Counts section of this Verified Complaint constitutes instances of corporate waste and the seizure of corporate opportunities to the detriment of the plaintiffs and other Wilon shareholders similarly situated.

**SEVENTH COUNT**

(Cause of action for Gross Mismanagement)

54. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through fifty-three of this Verified Complaint the same if they had been fully set forth herein at length.

55. The misconduct of the defendant directors detailed in the Allegations Common to All Counts section of this Verified Complaint constitutes gross mismanagement of Wilon.

## EIGHT COUNT

(Cause of action for Conversion)

56. The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through fifty-five of this Verified Complaint the same if they had been fully set forth herein at length

57. The misconduct of the defendant directors detailed in the Allegations Common to All Counts section of this Verified Complaint, constitutes conversion of the assets of Wilon by the defendant directors.

WHEREFORE, the named plaintiffs demand judgment against the named defendants, jointly and severally, on all counts of this Verified Complaint as follows:

(a) For an order authorizing the plaintiffs to select an independent certified accountant who shall be granted full access and ability to review the books and records of defendant Wilon to determine damages and profits contained therein, with interest;

(b) For an order compelling the removal of defendants H. Thompson, Pye and E. Thompson as directors of Wilon;

(c) For an order directing that the plaintiffs' slate of directors are appointed on an interim basis to fill the vacancies created by the removal of the defendant directors;

(d) For an order awarding the defendant corporation treble damages;

(e) For an order awarding the defendant corporation pecuniary damages, together with pre-judgment interest, at the highest legal rate from the date of the filing of this Verified Complaint to the present;

(f) For an order awarding reimbursement of all litigation expenses incurred by counsel for the plaintiffs, including, but not limited to, reasonable attorney' s fees and othe costs of suit; and

(g) For an order awarding such other and further relief as this court may deem appropriate and equitable in the premises.

## DEMAND FOR JURY TRIAL

**Plaintiffs Jim Anderson, James Gallacio, Steven Kanan, Vera F. Baker Trust, Westbay Management, Co. and Wayne Anderson, demand trial by jury on all factual issues set forth in this Verified Complaint.**

**Dated: May 3, 2007**

**LOWE & YEAGER**
**Attorneys for the plaintiffs**

**Darryl G. Lowe** BPR 002104
**LOWE & YEAGER**
900 ~~90~~ **South Gay Street**
**Suite 1950**
**Riverview Tower**
**Knoxville, Tennessee 37902**
**Tel. No. 865.521.6527**

**ROBERT H. JAFFE & ASSOCIATES, P.A.**
**Attorneys for Plaintiffs**

**Robert H. Jaffe (RJ 9773)**
**ROBERT H. JAFFE & ASSOCIATES, P.A.**
**8 Mountain Avenue**
**Springfield, New Jersey 07081**
**Tel. No. 973.467.2246**