UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JIM ANDERSON, JAMES GALLACIO,           )
STEVEN KANAN, VERA F. BAKER             )
TRUST, WESTBAY MANAGEMENT CO.           )
and WAYNE ANDERSON, on behalf of        )
themselves and all other stockholders of )
Wilon Resources, Inc.,                  )
                                        )
                Plaintiffs,             )
                                        )       No. 1:07-CV-100
v.                                      )
                                        )       Judge Curtis L. Collier
HARRY F. THOMPSON, AMY PYE,             )
ERIC J. THOMPSON, WILON RESOURCES,      )
INC., a Tennessee Corporation, and JOHN )
DOES 1-5,                               )
                                        )
                Defendants.             )
                                        )

## MEMORANDUM

On June 26, 2007, Defendant Wilon Resources, Inc. ("Wilon")[1] moved this Court to dismiss

Counts One, Three, and Five of the complaint of Plaintiffs Jim Anderson *et al*. ("Plaintiffs") for

failure to state a claim upon which relief could be granted, pursuant to Federal Rule of Civil

Procedure ("Fed. R. Civ. P.") 12(b)(6) (Court File No. 27).  Wilon filed a memorandum in support

of its motion (Court File No. 28); Plaintiffs filed a response, to which Wilon replied (Court File Nos.

35, 38); and, Wilon filed a supplemental motion to dismiss after Plaintiffs amended their complaint

---

[1]Plaintiffs make various allegations throughout their filings against Defendants, "defendant directors," and Defendant Harry F. Thompson.  Neither Plaintiff nor Defendant Wilon distinguish among the alleged perpetrators of each offense, but rather treat each allegation as if it is made against every Defendant.  Therefore, the Court makes no distinction either, and assumes Plaintiffs allege all claims against Wilon, even when the allegations do not expressly identify Wilon.

(Court File No. 68). For the following reasons, the Court will **GRANT** in part Defendant Wilon's

motion to dismiss, dismissing Count 1 (Plaintiffs' RICO claims) and Count 3 (Plaintiffs' common

law fraud claims) against Wilon (Court File No. 27). The Court will **DENY** in part Defendant

Wilon's motion to dismiss as it pertains to Count 5 (Plaintiffs' abuse of control claim). The Court

therefore will **DISMISS** Counts 1 and 3 of Plaintiffs' complaint as they relate to Defendant Wilon


I.      **FACTS**

Plaintiffs are stockholders of Defendant Wilon Resources, Inc. (Court File No. 66, pp. 2-3).

The additional defendants, Harry F. Thompson, Amy Pye, and Eric J. Thompson ("defendant

directors") are directors of Wilon (*id.*, p. 4). Plaintiffs allege the defendant directors issued

themselves five million shares of Wilon common stock on December 26, 2006. (*id.*). Plaintiffs

further allege Wilon acquired 89 natural gas wells (and were involved in drilling programs that

should have produced more) over a four-year period, but the defendant directors only represented

Wilon owned 65 wells, without explanation as to the discrepancy (*id.*, pp. 5-7).

Because the defendant directors share a family relationship and are involved in the alleged

offenses, Plaintiffs did not make a formal written demand on Wilon to prosecute the defendant

directors, as is normally required pursuant to Tenn. Code Ann. § 48-17-401(b) (2007) (Court File

No. 66, p. 8).

On or about March 13, 2007, Plaintiff Wayne Anderson, on behalf of Around the Clock

Partners, LP, offered to purchase all common stock of Wilon (Court File No. 66, pp. 8-10).

Defendants have failed to consider the offer, or provide the documentation requested to fully

develop a possibility of a sale (*id.*).

Plaintiffs also allege Defendants have issued fraudulent press releases and have made

numerous false statements to the shareholders (*id.*, pp. 11-15).


## II.     STANDARD OF REVIEW

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998), accepts the complaint's factual allegations as true, *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determines whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (May 21, 2007) (rejecting traditional Fed. R. Civ. P. 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).  The Court may not grant a 12(b)(6) motion based upon its disbelief of a complaint's factual allegations, *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995), nor should the Court weigh the evidence or evaluate the credibility of witnesses, *id.* (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The question is not whether the plaintiff will ultimately prevail but whether "the claimant is entitled to offer evidence to support the claims."  *Kroll v. United States*, 58 F.3d 1087 (6th Cir. 1995); *Ecclesiastical Order of the Ism. of Am., Inc. v. Internal Revenue Serv.*, 725 F.2d 398, 403 (6th Cir. 1984).  At the same time, bare assertions of legal conclusions are insufficient, and the complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

When a suit involves fraud or fraud-based claims, a plaintiff must plead his case with sufficient particularity as to the factual circumstances underlying the fraud.  Fed. R. Civ. P. 9(b); *see Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (A plaintiff must provide the time, place, and contents of any misrepresentations.)

### III. ANALYSIS

#### A.    Count 1: RICO Claims, 18 U.S.C. §§ 1962 (a) - (d).

Plaintiffs allege violations of each of the four subsections of the Racketeering Influenced and Corrupt Organizations Act ("RICO").  *See* 18 U.S.C. §§ 1962 (a) - (d).  Each of these subsections require "a pattern of racketeering."[2]  *See id.*  To establish a "pattern of racketeering activity," Plaintiffs must sufficiently allege (1) at least two predicate acts of racketeering activity within a ten-year period constituting a pattern of (2) related and (3) continuous racketeering behavior.  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723-24 (6th Cir. 2006).  Defendants argue the seven acts alleged by Plaintiffs to support their RICO claims (Court File No. 17, pp. 4-9) do not constitute predicate acts (Court File No. 28, pp. 2-17).  Because this Court reviews Plaintiffs' complaint under a Fed. R. Civ. P. 12(b)(6) standard, the Court accepts Plaintiffs' factual allegations as true and considers whether Plaintiffs have pleaded enough facts to state a claim to relief that is plausible.  *See Twombly*, 127 S.Ct. at 1974; *Broyde*, 13 F.3d at 996.  Because Plaintiffs have not sufficiently pleaded any predicate offenses, the Court will **GRANT** Defendant Wilon's motion to dismiss Count 1 with respect to Wilon (Court File No. 27).

#### 1.    Mail Fraud, 18 U.S.C. § 1341

Plaintiffs allege three instances to support a mail fraud offense in violation of 18 U.S.C. § 1341 (Court File Nos. 17, pp. 4-7; 66, p. 12).  None of these instances constitute mail fraud.  Mail

---

[2]The RICO offense under subsection (a) can be shown through a pattern of racketeering or "through collection of an unlawful debt in which such person has participated as a principal."  18 U.S.C. § 1962(a).  Plaintiffs do not allege the latter, so they must establish a pattern of racketeering to support their subsection (a) claim.

fraud under § 1341, in pertinent part, requires someone (1) having devised a scheme to defraud or obtain property by means of false or fraudulent pretenses (2) to use the mail (3) for the purposes of executing that scheme or attempting to do so. In the case of a civil RICO claim, there must be a scheme, targeted at the plaintiff, to defraud or obtain property, which involves fraudulent misrepresentations made to the plaintiff. *See Cent. Distribs. of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1994), *cert. denied*, 512 U.S. 1207 (For a claim of mail fraud to constitute a predicate offense for a RICO claim, "the defendant must [have made] a false statement or omission of fact *to the plaintiff*.") The plaintiff must have also detrimentally relied upon those fraudulent representations made to him or her. *Brown v. Cassens Trans. Co.*, 492 F.3d 640, 643 (6th Cir. 2007) ("the well-established precedent of this circuit requires that a civil RICO plaintiff alleging mail or wire fraud plead reliance, that is, that a defendant made fraudulent representations to the plaintiff on which the plaintiff relied."). If a scheme to defraud is established, the defendant must have used the United States mail system to facilitate or perpetuate the fraudulent scheme in some way to constitute mail fraud.

In the first alleged instance of mail fraud, Plaintiffs assert Wilon issued five million shares on December 26, 2006 without authorization of or notice to the shareholders (Court File Nos. 17, p. 4; 66, p. 12). Plaintiffs further assert: "[s]ince the request [to issue the shares] by defendant Harry F. Thompson represented instructions contained in a letter mailed by the United States Postal Service, this amounted to a violation of 18 U.S.C. 1341 (mail fraud)" (Court File No. 17, p. 4).[3]

---

[3]Plaintiffs alleged Defendants' issuance of shares constituted counterfeiting in their amended complaint, but alleged the offense was mail fraud in their RICO statement (*compare* Court File No. 66, p. 12, *with* Court File No. 17, p. 4). To the extent Plaintiffs do not intend to abandon their counterfeiting claim, they pleaded it only in name, but did not state the nature of the counterfeiting claim or articulate how the facts alleged support such a claim. As such, Plaintiffs fail to plead a

This alleged instance of mail fraud is insufficient because it fails to allege a scheme to defraud or obtain property by means of false or fraudulent pretenses. *See* 18 U.S.C. § 1341. Plaintiffs do not actually allege any fraudulent scheme targeted at Plaintiffs (*see* Court File No. 17, pp. 4-5). Even if the Court were to rewrite Plaintiffs' RICO Statement and infer a scheme in which Defendants were issuing additional shares in order to defraud Plaintiffs of the value of their stock, there has been no showing of any misrepresentations made to Plaintiffs as part of that scheme nor, even if there had been, that Plaintiffs detrimentally relied on those misrepresentations. *See Brown*, 492 F.3d at 643. Without such a showing, Plaintiffs fail to demonstrate this first instance constitutes mail fraud.

In the second alleged instance of mail fraud, Plaintiffs assert Defendant H. Thompson distributed a press release in November 2006, representing Columbia Natural Resources Interstate Pipeline ("Columbia") would accept Wilon's natural gas in the chemical state in which it was extracted (Court File No. 17, p. 6). Plaintiffs then allege, at some later point, Defendant H. Thompson informed shareholders the natural gas would only be accepted if "clean"[4] (Court File Nos. 17, p. 6; 66, p. 14).

This instance of alleged mail fraud fails to establish a predicate offense because Plaintiffs have failed to establish the elements of mail fraud, pursuant to 18 U.S.C. § 1341, and Plaintiffs have failed to plead the factual circumstances with sufficient particularity. *See* Fed. R. Civ. P. 9(b); *see Bender*, 749 F.2d at 1216.

---

counterfeiting claim that is plausible on its face, and thus fail to adequately address their burden for a counterfeiting claim under Fed. R. Civ. P. 12(b)(6). *See Twombly*, 127 S. Ct. at 1974. Thus, it does not serve as a predicate offense.

[4]"Clean" natural gas requires additional processing after its extraction.

First, Plaintiffs fail to allege the use of the United States mail system in alleging mail fraud (*see* Court File No. 17, pp. 6-7).  As such, Plaintiffs' mail fraud allegation fails.

Second, even if this Court were to assume the press release mentioned was circulated through U.S. mail, this allegation of mail fraud would still fail.  Plaintiffs allege Defendants' intent was to "induce those shareholders and potential shareholders to invest in the defendant corporation" (Court File No. 17, p. 7).  However, Plaintiffs again fail to allege any Plaintiffs actually relied on the alleged misrepresentation, as required to support a mail fraud offense in a civil RICO claim.  *See Brown*, 492 F.3d at 643.

Third, Plaintiffs have failed to allege the misrepresentation and surrounding circumstances with sufficient particularity.  *See* Fed. R. Civ. P. 9(b); *Bender*, 749 F.2d at 1216.  Plaintiffs allege an initial communication, in November 2006, represented the natural gas would be accepted by Columbia, and communications, made at an unspecified, later time, represented the gas would not be accepted unless cleaned first (Court File Nos. 17, p. 6; 66, p. 14).  These alleged facts are insufficient to establish misrepresentation.  If these statements are contradictory, as Plaintiffs seem to indicate (*see* Court File No. 17, p. 7), Plaintiffs have not identified which statement is the misrepresentation.  Furthermore, because Plaintiffs have not stated *when* the second statement or statements were made, both statements could be true if Columbia later decided they would only accept clean natural gas, or if Defendants were unaware initially of Columbia's requirement for clean natural gas.  It is unclear from Plaintiffs' pleadings whether any misrepresentation was even made to Plaintiffs.

In the third alleged instance of mail fraud, Plaintiffs allege generally Defendants committed mail fraud through various transmissions of press releases and communications (Court File No. 17,

p. 8). Plaintiffs identify two communications on June 6, 2006 and September 8, 2006, but provide no details as to what the communications contained (*id.*). The Court has no basis to infer those communications contained misrepresentations or otherwise furthered any alleged scheme to defraud (*see id.*). As such, the Court cannot consider these vague allegations as predicate offenses supporting Plaintiffs' RICO claims.

In sum, Plaintiffs' allegations of mail fraud cannot serve as predicate offenses for Plaintiffs' RICO claims.

### 2. "Relating to Racketeering," 18 U.S.C. § 1952

Plaintiffs allege some of Defendants' actions serve as predicate offenses because they are "relating to racketeering" (Court File No. 17, pp. 5-6). Plaintiffs cite 18 U.S.C. § 1952 as the statutory foundation of this assertion. That statute deals with interstate travel in aid of racketeering, but narrowly defines the "unlawful act" constituting such racketeering as "(1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title . . ." 18 U.S.C. § 1952. Plaintiffs do not specify any unlawful activity which would satisfy the requirements of § 1952 (*see* Court File No. 17, pp. 5-6). As such, these acts cannot serve as predicate acts for Plaintiffs' RICO claims.

### 3. "Fraudulent Conduct relating to a Theft of Company Assets"

Plaintiffs allege certain actions by Defendants constitute "fraudulent conduct relating to a theft of company assets" (Court File No. 17, p. 6). Only specifically-identified offenses can serve as predicate offenses. *See* 18 U.S.C. § 1961(1). No where in this list of predicate offenses is there an offense for "fraudulent conduct relating to a theft of company assets." *See id.* Without knowing under which statute Plaintiffs assert this claim, the Court is unable to determine whether the requirements of that statute are satisfied. As a result, this Court cannot accept Plaintiffs' allegation here as a predicate offense for their RICO claims.

### 4. Relating to Robbery, 18 U.S.C. § 1951

Plaintiffs allege, generally, "defendant directors" have robbed the assets of Wilon for their own personal benefit in violation of 18 U.S.C. § 1951 (Court File No. 17, p. 7). That statute defines the term robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1). Plaintiffs fail to allege any facts to support a claim of robbery. There is no support that any takings were of personal property against the will of a person present, or that such takings were done with actual or threatened force or violence. *See id.* As such, Plaintiffs' "relating to robbery" claim cannot serve as a predicate offense.

### 5. "Fraud in the Sale of Securities"

Plaintiffs allege Defendants induced potential shareholders into purchasing shares of Wilon in violation of "the Securities Act of 1933" (Court File No. 17, p. 8). Civil RICO has been amended

to only permit the use of fraud in the purchase or sale of securities as a predicate offense when the defendant has been criminally convicted in connection with that fraud. 18 U.S.C. § 1964(c).[5] Plaintiffs admit no criminal convictions have occurred in relation to the alleged securities fraud (Court File No. 17, p. 9). As such, this alleged offense cannot serve as a predicate to support Plaintiffs' RICO claims.

### 6. Conclusion

Because none of the alleged offenses can serve as predicate offenses, Plaintiffs have failed to allege the "pattern of racketeering behavior" necessary to establish their RICO claims. 18 U.S.C. § 1962; *see Moon*, 465 F.3d at 723-24. As such, the Court will **GRANT** Defendant Wilon's motion to dismiss Plaintiffs' RICO claims as they relate to Wilon (Court File No. 27).

## B. Count 3: Common Law Fraud

Plaintiffs allege "one or more of the defendant directors" committed common law fraud under Tennessee law (Court File No. 35, pp. 8-10; 66, p. 18). Plaintiffs separate their allegations of common law fraud into constructive, intentional, and negligent fraud (Court File No. 35, pp. 8-10).

### 1. Constructive Fraud

The Court will **GRANT** Defendant Wilon's motion to dismiss Plaintiffs' allegations of constructive fraud, as they fail to allege facts underlying the alleged constructive fraud with any specificity (Court File No. 27). Constructive fraud is "a breach of a legal or equitable duty which

---

[5]The provision reads as follows: ". . .no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [a civil RICO claim]. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final."

is deemed fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 39 (Tenn. Ct. App. 2006). Constructive fraud is distinguished from actual fraud because the former does not require a showing of an intent to deceive. *See id.*, at 39-40. In pleading constructive fraud, a plaintiff must plead the factual circumstances underlying the fraud with sufficient particularity, including the legal or equitable duty owed to the plaintiff and the specific nature of the breach of that duty. *See Kincaid*, 221 S.W.3d at 40; *accord* Fed. R. Civ. P. 9(b).

Here, Plaintiffs assert "[b]ased on claims which fall within the purview of constructive fraud in this case include the actions of defendant Harry Thompson in seizing corporate opportunities with respect to ownership of Wilon Gathering Systems, Inc., amine plant in circumstances where the ownership of the Wilon Gathering Systems, Inc. and amine plant could be used to extract fees from Wilon when its natural gas wells are once again in production" (Court File No. 35, pp. 8-9). Reviewing Plaintiffs' other submissions, the Court believes Plaintiffs are asserting Defendant H. Thompson established Wilon Gathering Systems, Inc. (a corporation distinct from Defendant Wilon) and other entities to set up a mechanism by which he could siphon money from Defendant Wilon at some future time (Court File No. 66, pp. 10-12). Plaintiffs do not provide how or when such siphoning of funds would have occurred, or what specific "corporate opportunity" Defendant H. Thompson was "seizing" (*see* Court File No. 35, pp. 8-9). *See Kincaid*, 221 S.W.3d at 40. As such, Plaintiffs fail to allege what legal duty Wilon breached or what injury Wilon caused to establish their claim of constructive fraud. *See id.* at 39-40.

## 2. Intentional and Negligent Fraud

The Court will **GRANT** Defendant Wilon's motion to dismiss Plaintiffs' allegations of

intentional and negligent fraud, because Plaintiffs have failed to show any Plaintiffs relied upon the communications which are alleged to constitute intentional and negligent fraud (Court File No. 27). Intentional fraud (deceit) requires: "(1) that a false misrepresentation has been made knowingly, without belief in its truth or recklessly (whether it be true or false) . . .; (2) of an existing or past material fact, and not an opinion or a conjecture as to future events; (3) which induces reasonable reliance; and (4) results in damages." *Media General, Inc. v. Tanner*, 625 F. Supp. 237, 246-247 (W.D. Tenn. 1985) (*citing Edwards v. Travelers Ins. of Hartford, Connecticut*, 563 F.2d 105, 110-13 (6th Cir. 1977)); *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn. Ct. App. 1976); *Georgia Marble Co. v. Standard Tile Co.*, 68 S.W.2d 429, 432 (Tenn. Ct. App. 1935). Negligent fraud requires: (1) untrue statements or omissions, (2) involving material facts, and (3) subsequent reliance on those statements or omissions. *Union Planters Nat. Bank of Memphis v. Commercial Credit Business Loans, Inc.,* 651 F.2d 1174 (6th Cir 1981). Again, in pleading fraud, a plaintiff must plead the factual circumstances with sufficient particularity. *See Kincaid*, 221 S.W.3d at 40; *accord* Fed. R. Civ. P. 9(b).

Here, Plaintiffs allege several instances of intentional and negligent fraud, citing to information in their various filings as follows (Court File No. 35, p. 9): (1) a press statement issued on April 2, 2007 by Defendant H. Thompson omitting the fact Wilon paid for an internal pipeline/gathering system that was actually owned by another corporation, which was owned by Defendant H. Thompson (Court File No. 1, ¶ 27); (2) representations made repeatedly since September 2006 by Defendant H. Thompson to shareholders that Wilon would take actions to install a natural gas pipeline, although Wilon never did (*id.*, ¶ 28); a press release in August 2006, and then subsequent non-specific representations made by defendant directors, both stating Columbia Natural

Resources Interstate Pipeline was both willing and unwilling to accept natural gas prior to being processed or "cleaned" (*id.*, ¶ 33(g)); a list and brief explanation of documents in Plaintiffs' possession (Court File No. 17, "Statement of Reasonable Inquiry"); the press release and subsequent communications during or after November 2006, as discussed in relation to Plaintiffs' RICO claim above, where defendant directors both asserted Columbia would and would not accept natural gas from Wilon prior to processing or "cleaning" (Court File No. 17, p. 6).[6]

Plaintiffs have failed to show any Plaintiffs relied upon the misrepresentations, an essential element for a claim of intentional or negligent fraud. *See, e.g., Haynes*, 546 S.W.2d at 232; *Union Planters,* 651 F.2d at 1174. Plaintiffs assert in their response: "[the fraudulent] statements and omissions were made *with the intent* that present and/or future stockholders would rely upon their content in deciding to invest in common stock of defendant Wilon or into project which were alleged to have pertained to the operation of Wilon" (Court File No. 35, pp. 9-10) (emphasis added). The reliance element of intentional and negligent fraud requires Plaintiffs actually to have relied upon the statements; it is not satisfied simply because Defendants intended Plaintiffs to rely. Plaintiffs have not shown or clearly alleged any of the Plaintiffs purchased or retained their shares in Wilon *in reliance on* the alleged instances of intentional and negligent fraud. Plaintiffs, when identifying themselves in their amended complaint, do represent some Plaintiffs have held, bought, or sold Wilon stock during the time period involved, but fail to ever relate that to any of the alleged instances of fraud (Court File No. 66, pp. 2-3). The Court cannot simply infer reliance. As such,

---

[6]Plaintiffs also cite the "Response to Question No. 4" in their RICO Statement (Court File No. 35, p. 9 (*citing* Court File No. 17, p. 3). Question 4's response lists the alleged victims and how they were injured (Court File No. 17, p. 3). In regards to alleging instances of Defendants' misrepresentations, the cited passage merely generally re-asserts all the misrepresentations allegedly made in press releases (*id.*).

Plaintiffs allegations of intentional and negligent fraud against Wilon are inadequate to survive dismissal.

### C.     Count 5: Abuse of Control

Plaintiffs allege Defendant Wilon's actions, as alleged generally in the factual section of the amended complaint, support a claim for abuse of control (Court File No. 66, p. 19). Wilon moves the Court to dismiss Plaintiffs' abuse of control claim because (a) no such cause of action exists (Court File No. 28, p. 25), (b) any "abuse of control" claim would be identical to Plaintiffs' breach of fiduciary duty claim (Court File No. 38, p. 19), and (c) any recovery under an "abuse of control" claim would be duplicative of recovery for a breach of fiduciary duty (*id.*).

There is some evidence an abuse of control claim exists under Tennessee law. Upon conducting a case law search in Tennessee for abuse of control claims, the Court has found seven references to such a claim in the Tennessee federal and state courts. Those seven cases provide no actual guidance to the contours of an abuse of control claim, but mention abuse of control claims in passing when addressing issues unrelated to the merits of the abuse of control claims. *In re: Ferro Corp. Derivative Lit. Thomas Auletta*, 511 F.3d 611, 616 (6th 2008) (denying relief from a dismissal of the plaintiffs' claims, one of which was "abuse of control," without making any specific determination as to the nature or validity of such a claim); *Prince v. Palmer*, 148 Fed. App'x 249, 250 (6th Cir. 2005) (remanding a case, involving an "abuse of control" claim, to the district court to be dismissed for lack of statutory standing); *In re Direct Gen. Corp. Sec. Litig.*, 2005 WL 1895638 (M.D. Tenn. August 3, 2005) (denying a motion to dismiss of the claim, including abuse of control, based upon the "demand requirement" involved when suing a corporation); *Levy v. Chandler*, 287 F. Supp. 2d 831, 834 (E.D. Tenn. 2003) (J. Collier) (denying a motion to remand the

claim because the alleged misconduct grew out of the federally-regulated pension plans); *Levy v. Chandler*, 287 F. Supp.2d 831 (E.D. Tenn. 2003) (denying Plaintiffs' motion to remand the proceedings); *Weir v. Palmer*, 2003 U.S. Dist. LEXIS 1737 (W.D. Tenn. January 27, 2003) (remanding due to a lack of an essential federal issue); *Hicks v. Lewis*, 148 S.W.3d 80, 82 (Tenn. Ct. App. 2003) (affirming the lower court's dismissal of the claim, including "abuse of control," due to a failure to make a pre-suit demand on the Utah corporation as required under Utah law). Without Tennessee case law supporting Wilon's assertion such a claim does not exist, this Court cannot dismiss Plaintiffs' abuse of control claim.

Wilon also argues the elements for an abuse of control claim are identical to a breach of fiduciary duty claim (Court File No. 38, p. 19). As Wilon states, there is no Tennessee case law providing the elements or specifics of an abuse of control claim (*id.*). Neither party has endeavored to set forth the elements of a claim of abuse of control to this Court. Without such an elaboration or analysis by the parties, it is premature for this Court to determine whether these two claims are identical.

Additionally, Wilon argues any recovery for abuse of control will be duplicative of recovery for a breach of fiduciary duty (Court File No. 38, p. 19). Since the Court has yet to make a decision concerning the similarities of the specific elements involved in these claims, the Court cannot dismiss one claim based upon the potential similarities with damages of another claim. Even if the damages are of the same nature, if the elements of the claims are not identical, Plaintiffs might establish one claim and not the other. Therefore, it is premature for the Court to dismiss one of the claims.

In light of the above analysis, the Court will **DENY** Defendant Wilon's motion to dismiss

Plaintiffs' claim for abuse of control with respect to Wilon (Court File No. 28, p. 25).

## IV.    CONCLUSION

In accordance with the preceding analysis, this Court will **GRANT** in part Defendant Wilon's motion to dismiss, dismissing Count 1 (Plaintiffs' RICO claims) and Count 3 (Plaintiffs' common law fraud claims) against Wilon (Court File No. 27). The Court will **DENY** in part Defendant Wilon's motion to dismiss as it pertains to Count 5 (Plaintiffs' abuse of control claim). The Court therefore will **DISMISS** Counts 1 and 3 of Plaintiffs' complaint as they relate to Defendant Wilon.

An Order shall enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**